1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  GABRIEL S. LOCASTRO,

9                                    Plaintiff,                    Case No. C14-5499-TSZ-BAT

10              v.                                          **REPORT AND**
                                                            **RECOMMENDATION**
11  CAROLYN W. COLVIN, Commissioner of
    Social Security,

12                                    Defendant.

13

14        Gabriel Locastro seeks review of the denial of his Supplemental Security Income and

15  Disability Insurance Benefits applications.  He contends the ALJ erred by finding him not fully

16  credible, failing to include all of his impairments in his RFC/hypothetical, finding he could

17  perform his past work, and failing to include all of the evidence in the record.  Dkt. 13.  As

18  discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the

19  case be **DISMISSED** with prejudice.

20                                    **BACKGROUND**

21        Mr. Locastro is currently 32 years old, has at least a high school education, and has

22  worked as a check clerk, material handler, and carpenter.  Tr. 27, 60.  On October 18, 2012, he

23  applied for benefits, alleging disability as of June 12, 2012.  Tr. 13.  His applications were denied

REPORT AND RECOMMENDATION - 1

1    initially and on reconsideration.  *Id*.  The ALJ conducted a hearing on January 24, 2014, finding

2    Mr. Locastro not disabled.  Tr. 28.

3        Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Locastro met the

4    insured status requirements through December 31, 2017; had not engaged in substantial gainful

5    activity since the alleged onset date; had severe impairments of obesity, tinnitus, hearing loss,

6    right shoulder abnormality, thoracic back abnormality, right ankle abnormality, depression,

7    posttraumatic stress disorder ("PTSD"), and status post tramatic brain injury ("TBI"); and that

8    these impairments did not meet or equal the requirements of a listed impairment.[2]  Tr. 15-16.

9    The ALJ further found that Mr. Locastro had the residual functional capacity ("RFC") to perform

10   light work that did not require more than occasional overhead reaching or more than frequent

11   reaching in other directions using his right hand; that did not require more than occasional

12   climbing, balancing, stooping, kneeling, crouching, or crawling; that did not require working on

13   scaffolding or climbing more than a single flight of stairs at a time; that did not require exposure

14   to hazards or to more than occasional vibration; that did not require concentrated exposure to

15   pulmonary irritants; that is performed in a quiet or very quiet noise environment or that allows

16   Mr. Locastro to wear hearing protection; that consists of simple, routine tasks; that does not

17   require teamwork; that does not require more than superficial interaction with the general public;

18   and that does not require the exercise of more than routine judgment.  Tr. 18.  The ALJ found

19   Mr. Locastro could perform his past work as a check clerk, and in the alternative, small parts

20   assembler, mailroom clerk, and marking clerk.  Tr. 27.  As the Appeals Council denied Mr.

21   Locastro's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

22

23   [1] 20 C.F.R. §§ 404.1520, 416.920.
     [2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**DISCUSSION**

**A.      The ALJ Did Not Err in Evaluating Mr. Locastro's Credibility**

Mr. Locastro's first assignment of error contends the ALJ "erred in finding claimant capable of performing light work and other work that exists in the national economy by ignoring claimant's psychological limitations."  Dkt. 12 at 9.  The caption is misleading, as Mr. Locastro's argument is merely a challenge to the ALJ's adverse credibility determination.[3]

The ALJ provided a number of reasons for finding Mr. Locastro's testimony not credible: (1) Mr. Locastro's statements regarding physical limitations were consistent with his RFC; (2) he engaged in activities that were inconsistent with his allegations of disabling limitations; (3) he made inconsistent statements regarding his education history; (4) he received unemployment benefits; (5) the medical evidence was inconsistent with the degree of physical and mental limitation claimed; and (6) evidence suggested Mr. Locastro exaggerated his symptoms and limitations.  Tr. 19-24.  Mr. Locastro challenges only one of these.

Mr. Locastro's single challenge contends the ALJ erred in relying on his daily activities in finding him not credible.  Dkt. 12 at 12-13.  The ALJ found Mr. Locastro's ability to attend to his personal care, provide some basic care for his son, prepare meals, perform household chores such as mowing and vacuuming, go outside alone, drive, watch television, and spend time with

---

[3] Mr. Locastro also states that the ALJ "gave only slight reference to medical evidence in concluding Claimant's residual functional capacity," the ALJ "should have consulted an independent medical expert to review, analyze and testify concerning claimant's mental health impairments," and the ALJ "failed to comply with his requirement to fully develop the record, [or] give full consideration to all evidence."  Dkt. 12 at 9-10.  But beyond these conclusory statements, Mr. Locastro fails to develop any arguments, and cites no authority or evidence from the record in support.  The Court may deem arguments that are unsupported by explanation to be waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).  Accordingly, the Court declines to address the additional points Mr. Locastro raises.

his wife daily was inconsistent with his testimony regarding back pain, his ability to lift 20 pounds and walk a few miles, difficulties dealing with people, anger problems, irritability, and difficulty maintaining concentration and attention.  Tr. 19, 23 (*citing* Tr. 224-31, 335); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (a claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony"; or that are transferable to a work setting.").  The Court agrees the ALJ erred because Mr. Locastro's testimony was not inconsistent with the daily activities the ALJ described.  Additionally, even if the activities the ALJ discussed were inconsistent with Mr. Locastro's stated impairments, the ALJ overstates the evidence.  *Compare* Tr. 23 *with* Tr. 224-31 (stating he is unable to sleep more than three hours each day, he is unable to manage his finances, he cooks "top ramen noodles," he avoids other cooking because he "almost burned the house down," he goes outside "only when I have to" and gets around as a *passenger* in the car (rather than as driver)).

Despite this error, the ALJ provided other unchallenged reasons, which are specific, clear and convincing and supported by substantial evidence.  *See Burrell v. Colvin*, No. 12-16673, ——— F.3d ———, 2014 U.S. App. LEXIS 24654 (9th Cir. Dec. 31, 2014) (*citing Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  For example, the ALJ also found that Mr. Locastro received unemployment benefits through the end of 2013, and he testified he told the state he was looking for work while receiving those benefits but that he was not actually looking for work.  Tr. 23; *see also* Tr. 47.  On this basis, the ALJ properly concluded Mr. Locastro's "willingness to make inaccurate reports in order to receive benefits" undermined his credibility.  Tr. 23.  *See, e.g., Carmickle v. Commiss'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (recognizing receipt of unemployment benefits could affect a claimant's credibility); *cf. Smolen*, 80 F.3d at

1  1284 (ALJ may use "ordinary techniques of credibility evaluation, such as the claimant's

2  reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

3  by the claimant that appears less than candid.").  Thus, because the ALJ gave at least one valid

4  reason for rejecting Mr. Locastro's testimony, Mr. Locastro has not established harmful error.

5  *Carmickle*, 533 F.3d at 1162 (including an erroneous reason, among other reasons, to discount a

6  claimant's credibility is at most harmless error if the other reasons are supported by substantial

7  evidence and the erroneous reason does not negate the validity of the overall credibility

8  determination).  Accordingly, the Court recommends affirming the ALJ's credibility finding.

9  **B.     The ALJ Did Not Err in Forming Mr. Locastro's RFC/Hypothetical**

10         Mr. Locastro next argues the ALJ "erred in not submitting a hypothetical question to the

11  Vocational Expert ["VE"] that included all of claimant's impairments."  Dkt. 12 at 13.  Mr.

12  Locastro makes no challenge to the ALJ's step-two findings (including depression, PTSD, and

13  TBI), nor does he contend the ALJ erred in evaluating the medical evidence.  Rather, Mr.

14  Locastro first argues the hypothetical posed by the ALJ to the VE "consisted fundamentally only

15  of exertional limitations."  *Id.*  As the Court understands the argument, Mr. Locastro suggests the

16  ALJ erred by omitting *non-exertional* limitations.  But Mr. Locastro's argument is contradicted

17  by the record.  The ALJ's RFC/hypothetical reflects that the ALJ included non-exertional

18  limitations, finding Mr. Locastro can perform light work that is performed in a

19              quiet or very quiet noise environment or allows the worker to wear
            hearing protection that would reduce the noise environment to
20              quiet or very quiet; that consists of simple, routine tasks; that does
            not require teamwork; that does not require more than superficial
21              interaction with the general public; and that does not require the
            exercise of more than routine judgment.

22
23  Tr. 18.  Thus, there is no support for Mr. Locastro's contention that the RFC/hypothetical fails to

incorporate any meaningful non-exertional limitations.

REPORT AND RECOMMENDATION - 5

But beyond his meritless assertion regarding non-exertional limitations, Mr. Locastro fails to explain why the ALJ improperly assessed his RFC/hypothetical.  As the Court has already noted, Mr. Locastro does not challenge the ALJ's step-two findings.  He also does not challenge the ALJ's evaluation of any of the medical evidence.  Rather, in a conclusory manner and without citation to the record, he states the "ALJ made no effort to address the non-exertional limitations and restrictions posed by Plaintiff's mood swings, difficulty in concentrating, difficulty in dealing with people."  Dkt. 12 at 13.  Mr. Locastro describes symptoms without identifying the *limitations* the ALJ did not incorporate into his RFC.  Accordingly, any error is harmless.  *See Molina*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Mr. Locastro also appears to believe the ALJ erred by not incorporating evidence from his VA records, arguing "[t]he record contains multiple and continuous treatment documents from the Veterans Administration ["VA"], American Lake." Dkt. 12 at 13. But Mr. Locastro does not identify which records he contends the ALJ ignored.  Nonetheless, contrary to Mr. Locastro's contention, the ALJ considered a number of VA mental health records.  *See* Tr. 21-25 (*citing* Tr. 914-17, 971-80, 1049-53, 1349-65, 1402-06, 1437-41).  In discussing a fifty percent VA disability rating related to PTSD, the ALJ found it "consistent with the mental limitations and the residual functional capacity."  Tr. 25.  But even if the VA disability rating had been more favorable to Mr. Locastro, and even if the ALJ were to have rejected it, "a VA rating of disability does not necessarily compel the [Social Security Administration] to reach an identical result." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (*citing* 20 C.F.R. § 404.1504).  Thus, as Mr. Locastro has failed to identify specific limitations the ALJ improperly failed to incorporate, the Court recommends affirming the ALJ.

**C.      The ALJ's Step Four Error was Harmless**

1  Mr. Locastro also argues the ALJ erred in finding he could perform his past work as a

2  check clerk — a reasoning level three job — given the ALJ's RFC finding that he was limited to

3  simple, routine tasks and work that does not require the exercise of more than routine judgment.

4  Dkt. 12 at 14.  According to the Dictionary of Occupational Titles ("DOT"), reasoning level

5  three jobs require the ability to "[a]pply commonsense understanding to carry out instructions

6  furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete

7  variables in or from standardized situations."  DOT, App. C.  Reasoning level two jobs require

8  the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written

9  or oral instructions.  Deal with problems involving a few concrete variables in or from

10 standardized situations."  *Id.*  Mr. Locastro concedes that courts have found reasoning level two

11 jobs to be consistent with the ability to do simple, routine work.[4]  *See* Dkt. 12 at 14-15.

12 An ALJ may rely on expert testimony which contradicts the DOT so long as the record

13 contains persuasive evidence to support the deviation.  *Johnson v. Shalala*, 60 F.3d 1428, 1435-

14 36 (9th Cir. 1995) (VE testified specifically about the characteristics of local jobs and properly

15 found their characteristics to be sedentary, despite DOT classification as light work); *see also*

16 SSR 00-4p (ALJ must identify and obtain reasonable explanation for any conflicts between

17 information in the DOT and occupational evidence provided by VEs).  At step five, the ALJ

18 found Mr. Locastro could perform alternate jobs as small parts assembler (DOT 706.684-022,

19

---

20 [4] Though the Ninth Circuit has not decided the issue, other courts have concluded there is no
conflict between a reasoning level two job and routine, non-complex work.  *See, e.g., Hackett v.

21 Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (Level two reasoning consistent with simple and
routine work tasks); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd

22 Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be
simple, routine and repetitive"); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005)

23 (finding that a limitation to simple, repetitive tasks did not contradict a finding that the plaintiff
could do work of reasoning level 2).

reasoning level two);[5] mailroom clerk (DOT 209.687-026, reasoning level three); and marking clerk (DOT 209.587-034, reasoning level two).  Though the ALJ asked the VE whether his testimony conflicted with the DOT, the ALJ failed to obtain explanations for the discrepancies in his testimony.  Tr. 59, 62.  Thus, to the extent the ALJ found Mr. Locastro could perform work requiring reasoning level three, he erred.

In *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999), the Ninth Circuit indicated that it did not need to address a claimant's assignments of error regarding one of two jobs identified by the ALJ given that the number of positions for the other job — between 1,000 and 1,500 in the local area — constituted a significant number.  In *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989), although the Ninth Circuit declined to exclude certain jobs identified, it found that, even if those jobs were excluded, the remaining jobs—1,266 jobs in the Los Angeles/Orange County area—constituted a significant number.[6] Here, considering the ALJ identified 1,200 jobs statewide and 382,000 jobs nationally that Mr. Locastro could perform even excluding consideration of the check clerk and mailroom clerk positions, the Court finds the ALJ's step five decision is supported by substantial evidence.

Given the identification of a significant number of other types of jobs requiring reasoning level two, Mr. Locastro has failed to demonstrate reversible harm.  *See Carmickle*, 533 F.3d at

---

[5] The DOT number (DOT 706.684-022) indicated by the VE and the ALJ corresponds to "small products assembler," rather than "small parts assembler" as characterized by the VE and ALJ.
[6] *See also Gray v. Comm'r, Soc. Sec. Admin.*, No. 09-35212, 365 Fed. Appx. 60, 2010 WL 440581 at *3 (9th Cir. 2010) (980 jobs in Oregon and 59,000 jobs nationally significant); *Thomas v. Barnhart*, 278 F.3d 947, 960 (1,300 jobs in Oregon region and 622,000 in the national economy significant); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego County and 64,000 jobs nationwide significant); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1987) (amended) (3,750 to 4,250 jobs regionally significant); *Murphy v. Colvin*, No. 13-0015-RAJ, 2013 WL 5371955 (W.D. Wash. 2013) (17,782 jobs nationally significant); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982  n.1 (C.D. Cal. 2005) (approximately 1,700 jobs locally and 38,000 jobs nationally significant).

1  1162-63 (9th Cir. 2008) (the relevant inquiry "is not whether the ALJ would have made a

2  different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid,

3  despite such error."); *see also Meanel*, 172 F.3d at 1114-15.  The Court thus recommends

4  affirming the ALJ.

5  **D.   New Evidence**

6  Finally, Mr. Locastro argues he is entitled to a remand for consideration of new and

7  material evidence.  Dkt. 12 at 15.  He provides the Court eighty-one pages of documentation he

8  contends warrant remand.  *See* Dkt. 12-1.  The Court distinguishes between two types of new

9  evidence in Social Security cases: (1) evidence that was not before the ALJ but that was

10  submitted to and considered by the Appeals Council;[7] and (2) evidence that is not part of the

11  administrative record but that was provided for the first time to this court on review (sentence six

12  new evidence).  As the Commissioner observes, the first portion of the document Mr. Locastro

13  presents to this court on appeal appears in the record as Exhibit 14B; it was submitted to and

14  considered by the Appeals Council.  *See* Tr. 1-6, 157-70; *see also* Dkt. 12-1 at 1-15.  The

15  remainder of the document appears to be absent from the administrative record.

16  Mr. Locastro makes no argument that Exhibit 14B (and its counterpart in the documents

17  he attaches) deprives the record of substantial evidence supporting the ALJ's decision.[8]  *See*

18  *Brewes*, 682 F.3d at 1163.  Thus, to the extent any valid arguments exist, the arguments have

19  been waived.  *See Avila*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2

20  _____

21  [7] *See Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (Evidence submitted to and considered by the Appeals Council after the ALJ's decision is properly part of the administrative record, and the Court must consider it when reviewing the Commissioner's

22  final decision for substantial evidence) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

23  [8] Mr. Locastro's reply states only that "the ALJ substantially ignored" his PTSD and TBI and his related VA disability rating.  Dkt. 14 at 3.

1   (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996)

2   (party who presents no explanation in support of claim of error waives issue)).  But even if the

3   Court were to assume any arguments had not been waived, it concludes Exhibit 14B does not

4   deprive the record of substantial evidence supporting the ALJ's decision.  Exhibit 14B contains a

5   February 18, 2014 VA Rating Decision and an accompanying explanation of entitlement based

6   on that rating. Tr. 157-70; Dkt. 12-1.  The Rating Decision includes an evaluation of fifty

7   percent for "migraine headaches residual of traumatic brain injury," twenty percent for "thoracic

8   degenerative disc disease," a finding of incompetency, and a "temporary evaluation of 100

9   percent" for an unspecified hospitalization.  *Id.*  The ALJ found other VA records containing a

10  finding of incompetency and a fifty percent rating related to PTSD with TBI and for  sleep apnea

11  were not inconsistent with Mr. Locastro's RFC; a finding Mr. Locastro does not challenge.  *See*

12  Tr. 25 (*citing* Tr. 1349-56).  Mr. Locastro has not shown that the rating decision in Exhibit 14B

13  is inconsistent with, or that it undermines the ALJ's findings regarding the other VA records he

14  considered — *see* Tr. 21-25 (*citing* Tr. 914-17, 971-80, 1049-53, 1349-65, 1402-06, 1437-41) —

15  or his overall decision.

16      The documentation Mr. Locastro provides that does not appear in Exhibit 14B, Dkt. 12-1

17  at 16-81, is "sentence six" new evidence.  To justify a remand for consideration of this evidence,

18  Mr. Locastro must show that the new evidence is "material" and that there is "good cause" for

19  his failure to include the evidence in the record during the administrative proceedings. 42 U.S.C.

20  § 405(g) (sentence six);[9] *see also Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991).  To be

21  _____

22  [9] Sentence six of 42 U.S.C. § 405(g) provides:
       The court may, on motion of the Commissioner of Social Security made
       for good cause shown before the Commissioner files the Commissioner's
       answer, remand the case to the Commissioner of Social Security for

23     further action by the Commissioner of Social Security, and it may at any

REPORT AND RECOMMENDATION - 10

1    material, "the new evidence must bear 'directly and substantially on the matter in dispute.'"

2    *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation omitted).  In addition, the

3    claimant must demonstrate a "'reasonable possibility' that the new evidence would have changed

4    the outcome of the administrative hearing."  *Id*. (citation omitted).  To demonstrate good cause,

5    the claimant must show the new evidence "was unavailable earlier."  *Id*. at 463.

6          The new evidence Mr. Locastro presents to this Court consists of a "C&P [compensation

7    and pension] PTSD Exam" dated January 19, 2014, Dkt. 12-1 at 18-52; a "C&P Exam" for

8    "Residuals of Traumatic Brain Injury," dated January 9, 2014, Dkt. 12-1 at 53-63; and Disability

9    Benefits Questionnaires regarding headaches, ear conditions, and back conditions, Dkt. 12-1 at

10   64-81.  These exams diagnosed PTSD and mild TBI, and identified chronic back pain and

11   headaches as symptoms.  *See* Dkt. 12-1 at 18.  The examiner's January 19, 2014 medical opinion

12   opined Mr. Locastro's cognitive and psychological/neurobehavioral symptoms were less likely

13   associated with residuals of mild TBI and more likely associated with "possible history of pre-

14   morbid academic struggles, . . . current mental health problems (e.g., PTSD; other anxiety and

15   mood symptoms), subjective reports of chronic bodily pain, . . .chronic sleep disturbance, . . .

16   fatigue, and current psychosocial stressors. . .."  Dkt. 12-1 at 50.  In numerous instances, the

17   _____

18   time order additional evidence to be taken before the Commissioner of
     Social Security, but only upon a showing that there is new evidence which
19   is material and that there is good cause for the failure to incorporate such
     evidence into the record in a prior proceeding; and the Commissioner of
20   Social Security shall, after the case is remanded, and after hearing such
     additional evidence if so ordered, modify or affirm the Commissioner's
21   findings of fact or the Commissioner's decision, or both, and shall file with
     the court any such additional and modified findings of fact and decision,
22   and, in any case in which the Commissioner has not made a decision fully
     favorable to the individual, a transcript of the additional record and
23   testimony upon which the Commissioner's action in modifying or
     affirming was based.

REPORT AND RECOMMENDATION - 11

1   exams noted Mr. Locastro's "evasiveness and inconsistent responding." *See, e.g.,* Dkt. 12-1 at

2   38, 40.

3          Mr. Locastro makes no serious argument that the additional evidence is material and

4   would in any way have changed the outcome of his hearing.  Rather, he states in a conclusory

5   manner that the material is "critically important."[10]  His entire argument appears to be that the

6   ALJ erred in issuing his decision just twenty-six days after his hearing, despite the fact that at his

7   hearing, his attorney told the ALJ he had requested additional evidence from the VA, including

8   compensation and pension exams, "pending ratings" for his back, and "COP exams."[11]  Tr. 37.

9   On the record before it and in light of the ALJ's RFC finding, the Court declines to find a

10  reasonable possibility that the new evidence would have changed the outcome of the ALJ's

11  decision.  But even if material, Mr. Locastro fails to show he had good cause for failing to

12  present the evidence earlier.  As the Commissioner observes, on April 1, 2014, Mr. Locastro's

13  attorney attempted, but failed, to fax to the Appeals Council the document he now attaches.[12]

14  *See* Dkt. 13 at 10-11, Dkt. 13-1.  He offers no explanation for his misstep.  Additionally, Mr.

15  Locastro's argument that the ALJ should have waited longer before issuing his decision so his

16  attorney could present additional evidence is without merit.  As the Commissioner notes, the

17  hearing transcript demonstrates the ALJ asked Mr. Locastro's attorney whether "we should wait

18  for what you've requested to come in?" to which the attorney replied, "I want to move forward,

19  your honor."  Tr. 38.  The parties then agreed to take the evidence they had with the

20  understanding that Mr. Locastro's attorney would be "free to make more argument later in the

21  [10] Mr. Locastro's reply only discusses the content contained in Exhibit 14B, and not the
    remaining evidence Mr. Locastro presented to the Court with his opening brief. *See* Dkt. 14 at 3.
22  [11] The hearing transcript suggests Mr. Locastro's counsel believed these documents were
    necessary to "support the actual ratings that we have." Tr. 37.
23  [12] Counsel for Mr. Locastro concedes that "[i]n preparing this opening brief it has come to light
    attempts to file same with the Appeals Council were unsuccessful." Dkt. 12 at 15.

REPORT AND RECOMMENDATION - 12

1  hearing." Tr. 40. Accordingly, the Court finds Mr. Locastro fails to justify a sentence six

2  remand or to otherwise demonstrate error.

3                                              **CONCLUSION**

4          For the foregoing reasons, the Court recommends that the Commissioner's decision

5  should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

6          A proposed order accompanies this Report and Recommendation. Objections, if any, to

7  this Report and Recommendation must be filed and served no later than **February 20, 2015**. If

8  no objections are filed, the matter will be ready for the Court's consideration on **February 23,**

9  **2015**. If objections are filed, any response is due within 14 days after being served with the

10  objections. A party filing an objection must note the matter for the Court's consideration 14

11  days from the date the objection is filed and served. Objections and responses shall not exceed

12  twelve pages. The failure to timely object may affect the right to appeal.

13          DATED this 6th day of February, 2015.

14

15

16                                          BRIAN A. TSUCHIDA
                                            United States Magistrate Judge

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 13